UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

K.A.P.L., by and through next of kin, Arianne Perez Luis,

Petitioner,

v.

ANGIE SALAZAR, in her official capacity as Acting Director of the Office of Refugee Resettlement; AMERICA CERVANTES, in her official capacity as Federal Field Specialist, Office of Refugee Resettlement; ANTONIO GONZALEZ, in his official capacity as the Federal Field Specialist Supervisor within the Office of Refugee Resettlement, and GUADALUPE DELGADO, in her official capacity as the Director for Maryville Academy San Juan Diego,

Respondents.

No. 26 CV 2477

Judge Georgia N. Alexakis

## ORDER

For the following reasons, the Court grants respondents' motion to dismiss this action as moot. [20].

## STATEMENT

### *Background*

The Homeland Security Act confers responsibility for the care and placement of unaccompanied alien children ("UACs") on the Office of Refugee Resettlement ("ORR"), a division within the Department of Health and Human Services ("HHS"). 6 U.S.C. §§ 279(a), (b)(1)(A). A UAC is a person who (a) has no lawful immigration status in the United States; (b) is a minor; and (c) has no parent or legal guardian in the United States who is available to provide care and physical custody for him or her. 6 U.S.C. § 279(g)(2). ORR need not maintain custody of UACs long-term. Instead, ORR may release a UAC to a "sponsor" or "custodian" after determining that the

sponsor "is capable of providing for the child's physical and mental well-being." 8 U.S.C. § 1232(c)(3)(A).

The following facts are uncontroverted. K.A.P.L. is a teenaged boy and a Cuban citizen. [1] ¶ 10. K.A.P.L. entered the United States on November 14, 2025, was designated a UAC by the Department of Homeland Security ("DHS"), and was placed in ORR's custody two days later. [1] ¶ 56; [13-1] ¶ 19. As part of that custody, K.A.P.L. was detained in a juvenile detention facility, the Maryville Academy San Juan Diego, beginning on November 16, 2025. [1] ¶ 10; [13-1] ¶ 19. While in that setting, K.A.P.L. was diagnosed with PTSD. [9] at 1.

Arianne Perez Luis is K.A.P.L.'s mother and has had lawful permanent resident status in the United States since December 2022. [1] ¶ 55. On November 20, 2025—four days after K.A.P.L. was detained—Perez Luis began the sponsor application process. [1] ¶ 59. Although ORR's stated policy is to adjudicate completed sponsorship applications of parents within 10 calendar days "absent an unexpected delay," Perez Luis encountered a number of delays during the vetting process that extended for nearly four months. 45 C.F.R. § 410.1205(b); [1] ¶¶ 61–69.

In early March 2026, while still in ORR's custody, K.A.P.L., through Perez Luis, filed a petition for a writ of habeas corpus. [1]. K.A.P.L. named as respondents three officials with ORR as well as Guadalupe Delgado, the director of Maryville Academy San Juan Diego. K.A.P.L. claimed that his ongoing detention violated his rights to procedural due process as well as the Administrative Procedures Act, 5 U.S.C. § 701 *et seq.*, the Trafficking Victims Protection Reauthorization Act, 22 U.S.C. § 7101 *et seq.*, and various ORR regulations. [1] ¶¶ 74–93. Through the petition, K.A.P.L. sought his "immediate release." [1] at 2; *see also id.* ¶¶ 85, 87–88, 96, 101–02; *id.* at 26 (Prayer for Relief). K.A.P.L. also sought a declaration that respondents had violated his constitutional and statutory rights and an injunction compelling respondents to reunite him with his mother. *Id.* at 26 (Prayer for Relief).

During a March 17, 2026 hearing, and just after the parties finished expedited briefing on K.A.P.L.'s petition, counsel for respondents represented that ORR intended to release K.A.P.L. to his mother as early as the next day, but did not commit to a more definite time for reunification. Owing to the interests at stake and the otherwise indefinite nature of K.A.P.L.'s detention, the Court told the parties that if K.A.P.L. and his mother had not been reunited by 9 a.m. on March 19, 2026, it would rule on K.A.P.L.'s petition at that time. *See* [16]. On March 18, 2026, K.A.P.L. was released to his mother. [17] ¶ 1.

The government now moves to dismiss K.A.P.L.'s habeas petition as moot under Federal Rule of Civil Procedure 12(b)(1). [20].

### *Legal Standard*

Article III of the United States Constitution limits federal courts to adjudication of "Cases" and "Controversies." U.S. Const. art. III, § 2. "Standing to bring and maintain a suit is an essential component of this case-or-controversy requirement." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1073 (7th Cir. 2013). To establish standing, a plaintiff must allege "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *see also Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 477 (1990)).

"[A]n actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *Ozinga v. Price*, 855 F.3d 730, 734 (7th Cir. 2017) (citation omitted). Although "[s]tanding is evaluated at the time suit is filed," *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of City of Milwaukee*, 708 F.3d 921, 928 (7th Cir. 2013), mootness precludes review "[w]hen a party with standing at the inception of the litigation loses it due to intervening events," *Parvati Corp. v. City of Oak Forest*, 630 F.3d 512, 516 (7th Cir. 2010). "When subject-matter jurisdiction—which is to say, the power to hear and decide the case at all—is at stake, a district judge may resolve factual disputes and make any findings necessary to determine the court's adjudicatory competence." *Craftwood II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479, 481 (7th Cir. 2019). A federal court must dismiss a habeas petition that has become moot. *Jackson v. Clements*, 796 F.3d 841, 843 (7th Cir. 2015).

### *Analysis*

At a glance, K.A.P.L.'s release from ORR custody and reunification with his mother fully remediate the injuries he complained of in his petition. [1] ¶¶ 71–73. There are two exceptions to the mootness doctrine that K.A.P.L. contends apply: he argues that ORR voluntarily ceased its challenged action, and that his claim is capable of repetition, yet evading review. [25] at 1–2. The Court addresses each exception in turn.

#### *1. Voluntary Cessation*

"As a general rule, voluntary cessation of allegedly illegal conduct does not make the case moot … That general rule does not apply when both: (1) there is no reasonable expectation that the alleged violation will reoccur; and (2) interim events irrevocably eradicated the alleged violation's effects." *EEOC v. Flambeau, Inc.*, 846 F.3d 941, 949 (7th Cir. 2017) (quoting *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979)) (cleaned up). The voluntary cessation exception exists to prevent a wrongdoer from resuming his challenged activity the moment a court looks away. "Otherwise, a

defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Ciarpaglini v. Norwood*, 817 F.3d 541, 544 (7th Cir. 2016) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). For that reason, a respondent cannot moot a case against her simply by stating that she will not resume the contested conduct, particularly if she does not foreclose the possibility that she will resume the conduct if similar circumstances reoccur. *See FBI v. Fikre*, 601 U.S. 234, 240 (2024) (government declaration that plaintiff "will not be placed on the No Fly List in the future based on the currently available information" did not moot the controversy).

In March 2026, K.A.P.L. was released from ORR custody into the care of his mother. Respondents assert that there is no reasonable expectation that ORR will repeat the alleged violations: detaining K.A.P.L. and keeping him apart from his mother. *See* [26] at 2–3. They point to regulations providing that after a UAC is released to a sponsor, ORR no longer has legal custody over the child. 45 C.F.R. § 410.1001 "Release" ("After release, ORR does not have legal custody of the unaccompanied child, and the sponsor becomes responsible for providing for the unaccompanied child's physical and mental well-being."). Even if ORR wanted to reassert custody over K.A.P.L., whether K.A.P.L. is re-detained is outside of ORR's control. ORR places and cares for children who are detained and designated as UACs, but it does not itself arrest UACs. *See* 8 U.S.C. § 1232(b) (providing procedures for federal agencies to transfer UACs who have already been arrested to the custody of HHS); *see also* Office of Refugee Resettlement, Unaccompanied Alien Children Bureau Fact Sheet, U.S. Dep't of Health and Hum. Servs., https://acf.gov/orr/fact-sheet/programs/uc/fact-sheet (last visited Sep. 1, 2026) ("Unaccompanied alien children are referred to ORR by another federal agency, usually the Department of Homeland Security … HHS plays no role in the apprehension or initial detention of unaccompanied alien children."). The Court agrees with respondents that ORR is not in a position to resume the challenged activity as soon as a challenge against it is declared moot, which is the course of action the voluntary cessation exception exists to thwart. *See Ciarpaglini*, 817 F.3d at 544.

In response, K.A.P.L. cites three cases showing examples of minors who were released from ORR custody and then re-detained. *See* [25] at 2. In two of the three cases, district judges granted the minors' habeas petitions and ordered them released from ORR custody immediately. *See A.N.P.S. v. Salazar*, No. 25-CV-14778, 2025 WL 3707333, at *1 (N.D. Ill. Dec. 22, 2025); *E.F.E.L. v. Noem*, No. 26-CV-02507, 2026 WL 1045550, at *1 (N.D. Ill. Apr. 17, 2026).* Still, *A.N.P.S.* made particular note of how

* In the third case, a group of plaintiffs seeking to represent a class of re-detained UACs moved the district court for a preliminary injunction prohibiting the government from requiring all previously approved sponsors to restart the sponsor application process. *Diego N. v. U.S. Dep't of Health and Hum. Servs.*, No. 26-cv-00577 (CJN), 2026 WL 1179706, at *1 (D.D.C. Apr. 30, 2026). The court declined to grant the preliminary injunction, finding in part

rare that situation is. 2025 WL 3707333, at *3 ("[T]he issue presented by the petition—under what circumstances a UAC previously-released to a sponsor, re-detained without probable cause shall be released from ORR custody—has only been litigated once previously.") (citing *Saravia v. Sessions*, 280 F. Supp. 3d 1168 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018)). And in each of the three cases, the minor petitioners were re-arrested not by ORR or HHS, but rather by DHS. *Id.* at *3; *E.F.E.L.*, 2026 WL 1045550, at *3; *Diego N. v. U.S. Dep't of Health and Human Servs.*, No. 26-cv-00577 (CJN), 2026 WL 1179706, at *2 (D.D.C. Apr. 30, 2026).

To be sure, following their initial detention, the UACs in these three cases were transferred from DHS back to ORR (by operation of law), and while in ORR's custody, they were kept separated from family. These instances of re-detention thus mirror K.A.P.L.'s initial grievance concerning prolonged separation from his mother. In addition, even one example of a minor needlessly separated from a qualified sponsor is one example too many. Yet, based on the limited set of data points before it, the Court agrees with respondents that there is no "reasonable expectation or a demonstrated probability that the same controversy" underlying K.A.P.L.'s habeas petition will re-occur. *Jones v. Sullivan*, 938 F.2d 801, 807 (7th Cir. 1991) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)) (cleaned up). There is instead only a mere possibility. *See id.* at 806–807.

Separately, a party seeking a finding of mootness despite voluntary cessation must show that "interim events irrevocably eradicated the alleged violation's effects." *Flambeau, Inc.*, 846 F.3d at 949 (citation omitted). The primary effects of the alleged violation that K.A.P.L. complained of were his detention and separation from his mother. [1] ¶¶ 71–73. K.A.P.L. has since been released from detention and reunited with his mother. [17] ¶ 1. Because he was released, he is no longer suffering the effects of his detention: lack of freedom and separation from his mother. *See Jones* , 938 F.2d at 807 (because plaintiffs received the relief they requested, there were no remaining effects of the alleged violation).

K.A.P.L. maintains that his ongoing PTSD and psychological distress stemming from his period in custody means that interim events have not irrevocably eradicated the alleged violation's effects. [25] at 3. But habeas relief cannot assuage that effect. "The core requirement of the case-or-controversy standard is that the parties 'have a personal stake in the outcome of the lawsuit throughout its duration.'" *Flambeau, Inc.*, 846 F.3d at 950 (quoting *Wis. Right to Life Pol. Action Comm. v. Barland*, 664 F.3d 139, 149 (7th Cir. 2011)). Custody, including parole, always satisfies the case-or-controversy requirement. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). "Once the … sentence has expired, however, some concrete and continuing injury other than the now-ended incarceration or parole—some collateral consequence of the

---

that plaintiffs had not shown a likelihood of success on the merits of their claims because habeas petitions provided an avenue for them to be heard and granted relief. *Id.* at *6, *8.

conviction—must exist if the suit is to be maintained." *Id.* (cleaned up). Even assuming K.A.P.L. developed PTSD as a result of being held in ORR custody and not due to other trauma, a grant of declaratory judgment would not remediate that harm, even if it might be emotionally satisfying. *See id.* (finding habeas petition moot after petitioner was released because his confinement was "now over, and cannot be undone"); *UWM Student Assn. v. Lovell*, 888 F.3d 854, 862 (7th Cir. 2018) ("To the extent plaintiffs seek a declaratory judgment to secure emotional satisfaction from a declaration that they were wronged, that will not save their claims from being dismissed as moot.").

K.A.P.L.'s ongoing PTSD does not align this case with cases finding habeas petitions not moot when a petitioner is released, but still experiences collateral consequences from his conviction. *See*, *e.g.*, *A.M. v. Butler*, 360 F.3d 787, 790 (7th Cir. 2004) (habeas petition challenging declaration of juvenile delinquency was not moot although petitioner was no longer in custody because having the juvenile delinquency on his record could aggravate future sentences). If a criminal habeas petitioner challenges his conviction, release from incarceration does not render his challenge moot if the fact of the conviction has continued collateral consequences on his life, such as reduced business opportunities or exclusion from voting in elections or serving on juries. *Puchner v. Kruziki*, 111 F.3d 541, 543 (7th Cir. 1997). That is because the conviction itself, not just the incarceration, has ongoing impact on the petitioner's life that a court can remediate by vacating the conviction. *Id.* In the instant case, though, the requested relief would not redress K.A.P.L.'s injury. To seek redress for his PTSD, K.A.P.L. would have to file a claim for damages under tort; habeas corpus is not the correct instrument. *See Glaus v. Anderson*, 408 F.3d 382, 387 (7th Cir. 2005) (when release from custody was not an available remedy for a prisoner who allegedly had been denied health care in violation of the Eighth Amendment, his claim could properly be brought as a civil rights claim or a Federal Tort Claims Act claim against the United States).

### *2. Capable of Repetition, Yet Evading Review*

A claim is not moot if it is capable of repetition yet evading review, as in instances where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007) (quoting *Spencer*, 523 U.S. at 17). The capable-of-repetition doctrine typically applies to "inherently transitory situations, such as a pregnancy or an election campaign, that will run its course faster than courts can usually act to provide complete review on the merits." *Ciarpaglini*, 817 F.3d at 547. For the reasons already articulated, K.A.P.L. cannot satisfy the second prong: a reasonable expectation of repetition.

* * *

Because K.A.P.L. was released to his mother and is not reasonably expected to be re-detained by ORR, and because his requested relief would not redress his remaining injuries, the Court lacks standing to review his habeas petition. [1].

## Certificate of Appealability

Habeas Rule 11(a) requires the Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a habeas petition is dismissed on procedural grounds without reaching the merits, a court should issue a certificate of appealability if "the proverbial reasonable jurist would find both the district court's procedural decision and the merits of the claim debatable." *Peterson v. Douma*, 751 F.3d 524, 530–31 (7th Cir. 2014) (citing *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). For the reasons stated above, reasonable jurists would not find the mootness of K.A.P.L.'s claims debatable and the Court declines to issue a certificate of appealability.

## Conclusion

For the reasons stated, the Court grants respondents' motion to dismiss. [20]. Petitioner's petition for habeas corpus [1] is dismissed without prejudice as moot. Judgment will be entered in favor of respondents. Civil case terminated.

ENTER:

Date: 9/1/2026

Georgia N. Alexakis
U.S. District Judge